USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 08/19/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LILLIAN RIVERA,

        Petitioner,

        v.

SABRINA KAPLAN,

        Respondent.

No. 17-CV-2257 (RA) (SN)

ORDER ADOPTING REPORT
AND RECOMMENDATION

RONNIE ABRAMS, United States District Judge:

In this petition for a writ of habeas corpus (the "Petition") filed pursuant to 28 U.S.C. § 2254, Lillian Rivera challenges her conviction, following a jury trial, for conspiracy in the second degree, criminal possession of a controlled substance in the first and third degrees, and criminal sale of a controlled substance in the third degree. Each of these charges stemmed from a large-scale cocaine dealing operation led by Rivera. Following her trial, she directly appealed to the New York Supreme Court's Appellate Division, which upheld her conviction; she then moved to vacate her conviction pursuant to New York Criminal Procedure Law § 440.10, also without success.[1] Rivera subsequently filed the instant Petition, which this Court referred to Magistrate Judge Sarah Netburn for a Report and Recommendation (the "Report"). Judge Netburn has recommended dismissing each of Rivera's claims, and Rivera has filed objections. The Court assumes the parties' familiarity with the facts, as outlined in detail in the Report. For the reasons that follow, the Court adopts the Report in its entirety and dismisses the Petition.

---

[1] § 440.10 provides that a defendant may move the court that entered a judgment to vacate that judgment on multiple potential grounds, including that the "judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States." N.Y. C.P.L. § 440.10(1)(h).

**LEGAL STANDARDS**

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). In doing so, it may "adopt those portions of the recommendation to which 'specific, written objection' is made, as long as those sections are not clearly erroneous." *Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997) (quoting Fed. R. Civ. P. 72(b)). "A magistrate judge's decision is clearly erroneous only if the district court is left with the definite and firm conviction that a mistake has been committed." *Stenson v. Heath*, No. 11-CV-5680 (RJS), 2015 WL 3826596, at *2 (S.D.N.Y. 2015).[2] A court must, by contrast, undertake a *de novo* review of those portions of a report to which specific objections have been made. *See* § 636(b)(1)(C); *Greene*, 956 F. Supp. at 513. "Objections of *pro se* litigants are generally accorded leniency and construed to raise the strongest arguments that they suggest." *Quinn v. Stewart*, No. 10-CV-8692 (PAE) (JCF), 2012 WL 1080145, at *4 (S.D.N.Y. Apr. 2, 2012).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that when a state court has previously adjudicated the merits of a petitioner's habeas claim, a federal district court may grant relief only where the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § (d)(2). *See Harrington v. Richter*, 562 U.S. 86, 103 (2011) (noting that § 2254(d) is "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal

---

[2] Unless otherwise noted, case quotations omit all internal quotation marks, citations, alterations, and footnotes.

forum for asserting constitutional challenges to state convictions"). A state court decision is "contrary" to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision constitutes an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the [petitioner's] case." *Id.* Federal habeas courts must also "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting § 2254(e)(1)).

Moreover, a federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment," *Coleman v. Thompson*, 501 U.S. 722, 729 (1991), "unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," *id.* at 750. Procedural default precludes habeas review when "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005).

Finally, a federal court may not grant habeas relief unless a petitioner has exhausted her claims. Exhaustion requires an individual to "fairly present" her claims to the state courts, that is, to "present[] the essential factual and legal premises of [her] federal constitutional claim to the highest state court capable of reviewing it." *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014). Although she need not "cite chapter and verse of the Constitution," she must express her claim "in terms that are likely to alert the state courts to the claim's federal nature." *Id.*

3

## DISCUSSION

Rivera's Petition alleges the following: the state trial court violated her Fourth Amendment rights by denying, without a hearing, her motion to suppress evidence obtained from her arrest, a search of her apartment, and a wiretap; the state trial court violated her right to a fair trial by admitting certain exhibits and testimony and by denying her motions to sever her trial from that of her co-defendant; the state trial court violated her Confrontation Clause rights by admitting certain hearsay evidence; the prosecution failed to timely disclose allegedly exculpatory information in violation of *Brady v. Maryland*; her trial counsel was constitutionally ineffective by failing to object to the admission of certain evidence and by failing to adopt her *pro se* severance motion; and the state trial court's sentence was constitutionally excessive. In a 52-page Report, Judge Netburn reviewed Rivera's claims and found that each one either was unexhausted, was procedurally barred, failed on the merits, or suffered from multiple of these defects.

Rivera filed a Notice of Objections in which she appears to object to virtually the entirety of the Report. Namely, she challenges: (1) the determination that her Fourth Amendment claim is both procedurally defaulted and incognizable on habeas review; (2) the determination that her Title III claim challenging the admission of wiretap evidence is both unexhausted and fails on the merits, as well as the legal standard that the Report employed in reviewing that claim; (3) the determination that she has procedurally defaulted her severance claim, has not shown cause or prejudice excusing that default, and that the severance claim fails on the merits; (4) the determination that her *Brady* claim is unexhausted and fails on the merits; (5) the determination that her Confrontation Clause claim is procedurally barred and fails on the merits; (6) the determination that her juror-replacement claim is procedurally barred and fails on the merits; (7) the determination that her unsworn-witness claim is procedurally barred and fails on the merits; (8) the determination that her ineffective assistance of counsel claim is procedurally barred and

fails on the merits; and (9) the determination that her Eighth Amendment claim fails on the merits. The Court has reviewed each of Rivera's objections to the Report and concludes that none of them have merit.

As an initial matter, the Court notes that several of Rivera's objections constitute perfunctory or conclusory responses to the Report's findings, or repeat the arguments made in her initial Petition. Those objections will be reviewed only for clear error. *See Alfaro v. Capra*, No. 13-CV-5867 (RA) (GWG), 2016 WL 6778798, at \*2 (S.D.N.Y. Nov. 14, 2016) ("Because Petitioner merely reiterates his original arguments raised before the magistrate judge, the Court reviews the Report for clear error."); *Barratt v. Joie*, No. 96-CV-0324, 2002 WL 335014, at \*1 (S.D.N.Y. Mar. 4, 2002) (explaining that when a petitioner "makes only conclusory or general objections, or simply reiterates [her] original arguments, the Court reviews the Report and Recommendation only for clear error"); *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition."); *Pinkney v. Progressive Home Health Servs.*, No. 06-CV-5023, 2008 WL 2811816, at \*1 (S.D.N.Y. July 21, 2008) ("[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal.").[3]

---

[3] For some claims that the Report recommends dismissing on multiple grounds, the Court chooses for efficiency to adopt only one of those dispositive findings. *See Dunham v. Travis*, 313 F.3d 724, 729-30 (2d. Cir. 2002) (explaining that "hurdling the procedural questions to reach the merits of a habeas petition is justified" when the merits are "easily resolvable against the habeas petitioner, whereas the procedural-bar issue involves complicated issues of state law"); *Green v. Legoney*, No. 09-CV-0747 (SAS), 2012 WL 5278465, at \*8 (S.D.N.Y. Oct. 25, 2012) (disposing of a claim on the merits "in the interests of judicial economy"); *Totesau v. Lee*, No. 19-CV-6992 (PKC), 2022 WL 1666895, at \*19 n.30 (E.D.N.Y. May 25, 2022) ("This Court declines to address the procedural default because the merits of the underlying claims are easily resolved against Petitioner."). In particular, because "[f]ederal courts disagree as to whether a New York state court's reliance on CPL § 440.10(2)(a) constitutes a procedural bar that precludes federal habeas review," *Jiang v. Larkin*, No. 12-CV-3869 (PGG) (SN), 2016 WL 1718260, at \*22 & n.6 (S.D.N.Y. Apr. 28, 2016) (collecting cases, including conflicting Second Circuit authority), the Court elects to deny certain claims on the merits rather than addressing the applicability of that state law provision as a procedural bar.

*Fourth Amendment Claim*[4]

Rivera first objects to the Report's determination that her Fourth Amendment claim, which challenges the denial of her suppression motion without a hearing, is incognizable on habeas review pursuant to *Stone v. Powell*, 428 U.S. 465 (1976), as well as the Report's decision not to instead analyze this claim as a cognizable due process claim. *See* Objections at 2. "As a general rule, Fourth Amendment claims are not reviewable by the federal courts when raised in a petition brought under § 2254 unless the [petitioner] shows that he or she has not had a full and fair opportunity to litigate that claim in the state court." *Graham v. Costello*, 299 F.3d 129, 133-34 (2d Cir. 2002). Accordingly, such claims are reviewable on habeas only "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).

---

[4] In her objection with respect to this claim, Rivera appears to argue that Judge Netburn erroneously concluded that New York Criminal Procedure Law § 160.50—which, as relevant here, requires sealing prior criminal proceedings that terminated in a defendant's favor—constituted an adequate and independent ground for the dismissal of her Fourth Amendment claim. *See* Objections at 1 ("Petitioner objects to Magistrate Netburn's assertion that CPL 160.50 contained adequate and independent state grounds."). This argument misreads the relevant portion of the Report: Judge Netburn found instead that to the extent Rivera's Petition relies on an alleged violation of § 160.50, it fails because violations of state law, without more, are not cognizable on habeas review. *See* Report at 18 ("[T]he Petition may be interpreted to assert . . . that the search warrant applications relied in part upon Rivera's prior bad acts that had actually terminated in her favor in violation of CPL § 160.50 . . . These claims . . . should be denied to the extent Rivera bases her arguments on alleged violations of state law only.") (alterations, citations, and quotation marks omitted); *see also id.* at 38. There is no error in this holding. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."). To the extent Rivera's objections may be read to argue instead that the alleged violation of § 160.50 violated her federal due process rights, *see id.* at 23, 38-39, Judge Netburn is correct that this argument also fails because the Supreme Court has not yet determined whether the admission of "prior crimes" evidence to show propensity runs afoul of the Due Process Clause, and Rivera has not otherwise argued how the allegedly erroneous admission of such evidence denied her the right to a fair trial. *See Estelle*, 502 U.S. at 75 n.5. Indeed, Rivera appears to acknowledge this in her objections. *See* Objections at 9 ("Regarding Rivera's initial contention that her trial was fundamentally unfair due to the improper admission of prior bad acts which violated her right to Due Process, Petitioner agrees to abandon this claim . . . due to the fact that there is no Supreme Court precedent on this issue in a Habeas proceeding."). Finally, to the extent these arguments were not presented to the state courts despite being apparent from the record, they are procedurally barred under § 440.10(2)(c). *See* Report at 18; SR 813-14.

6

The Court agrees with the Report's finding that Rivera had a full and fair opportunity to litigate her suppression motion, which renders her Fourth Amendment claim incognizable. As to *Capellan*'s first prong, New York's corrective procedures to remedy Fourth Amendment violations have been deemed "facially adequate." *See id.* at 70 n.1. As to its second prong, an "unconscionable breakdown" in a facially adequate corrective mechanism occurs only "where the petitioner demonstrates that no state court conducted a reasoned method of inquiry into relevant questions of fact and law, or any inquiry at all into the Fourth Amendment claim." *Washington v. Walsh*, No. 10-CV-7288 (RJS), 2015 WL 4154103, at *18 (S.D.N.Y. July 9, 2015). Rivera cannot demonstrate as much here, as the record indicates that she raised her Fourth Amendment claim before both the state trial court and the Appellate Division, and that both courts conducted an inquiry into the merits of that claim. *See* SR 84-87 (state trial court finding that Rivera's "conclusory allegations . . . do not supply a factual basis for suppression" of property recovered from her person during her arrest, that Rivera likely did not have a reasonable expectation of privacy in the premises that were searched, and that Rivera had failed to present a legal issue as to the facial invalidity of the search warrants); SR 607 (Appellate Division affirming all aspects of the trial court's decision).[5]

Rivera appears to challenge in particular the state trial court's decision not to hold a hearing before denying the suppression motion—but "the absence of a suppression hearing, in and of itself, does not rise to the level of an unconscionable breakdown in the underlying process." *Harrison v. Smith*, No. 05-CV-5953 (JGK), 2012 WL 3822211, at *2 (S.D.N.Y. Sept. 4, 2012). *Accord Clanton v. LaClair*, No. 14-CV-4551 (ER) (MHD), 2015 WL 13832649, at *11-12 (S.D.N.Y. Nov. 4, 2015), *adopted by* 2019 WL 4688725 (finding that the state court's decision not to hold an

---

[5] Citations to "SR" refer to the state court records, which may be found at ECF 21.

evidentiary hearing pursuant to *Franks v. Delaware* did not constitute an unconscionable breakdown); *Kirk v. Burge*, 646 F. Supp. 2d 534, 545 (S.D.N.Y. 2009) (finding that the state court's decision not to hold a *Mapp/Dunaway* hearing did not constitute an unconscionable breakdown). Moreover, as Judge Netburn rightly observes, "[i]f the substance of the claim is a Fourth Amendment claim, *Stone* applies even if the claim is also characterized as a due process claim." *Salcedo v. Smith*, No. 05-CV-3497 (JGK), 2006 WL 1644700, at *3 n.1 (S.D.N.Y. June 13, 2006). There was thus no error in treating Rivera's claims challenging the validity of various searches as arising under the Fourth Amendment rather than under the Due Process Clause.

### *Title III Claim*

The Court next turns to Rivera's Title III claim, in which she argues that evidence obtained from wiretaps of her cell phones was admitted in violation of that federal statute, thus infringing on her rights to due process and a fair trial.

As an initial matter, the Report employed the correct legal standard in assessing this claim. In *Hill v. United States*, 368 U.S. 424 (1979), the Supreme Court explained that habeas review of an alleged violation of a federal statute is cognizable only when the claim asserts "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *Id.* at 428. Rivera contends that this standard applies only to individuals who are in federal custody, such as the habeas petitioner in *Hill*. *See* Objections at 3-4. But the Supreme Court's subsequent "decisions assume that *Hill* controls collateral review—under both §§ 2254 and 2255—when[ever] a federal statute, but not the Constitution, is the basis for the postconviction attack." *Reed v. Farley*, 512 U.S. 339, 353-54 (1994). *Cf. Reilly v. Warden, FCI Petersburg*, 947 F.2d 43, 44-45 (2d Cir. 1991) (per curiam) (explaining that §§ 2254 and 2255 "have the same operative effects" and "the same operative limitations, at least with regard to the magnitude and nature of the error required to sustain a

collateral attack"). Thus, assuming without deciding that Title III provides an independent ground for habeas relief separate from the Fourth Amendment, *see Gjelaj v. Ercole*, No. 09-CV-3126 (KMW) (PED), 2012 WL 4450983, at *15 (S.D.N.Y. Feb. 9, 2012), *adopted by* 2012 WL 4435299 (explaining that the Second Circuit has not yet decided whether Title III claims constitute an independent basis for federal habeas relief),[6] the Report is correct that *Hill* governs such claims.

Nor are Rivera's objections to the Report's Title III merits analysis availing. As relevant here, Title III requires that a wiretap application include "details as to the particular offense that has been, is being, or is about to be committed" and state whether "other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(b)-(c). *See United States v. Lambus*, 897 F.3d 368, 394 (2d Cir. 2018). District courts in this Circuit are split as to when a Title III violation might result in such a miscarriage of justice. One court has suggested that any "conviction based on evidence obtained in violation of [the] statute is fundamentally defective and results in a miscarriage of justice." *Cruz v. Alexander*, 477 F. Supp. 516, 521 (S.D.N.Y. 1979), *appeal dismissed*, 622 F.2d 573 (2d Cir. 1980). Others, by contrast, have "concluded that even substantial violations of the procedures mandated by Title III are not cognizable on habeas review." *Gjelaj*, 2012 WL 4450983, at *15 (citing *Hussong v. Warden*, 623 F.2d 1185, 190-91 (7th Cir. 1980), and *Barbosa v. Bissonnette*, 434 F. Supp. 2d 25, 34-35 (D. Mass. 2006)). *See also Lord v. Lambert*, 347 F.3d 1091, 1095 (9th Cir. 2003) (holding that alleged violations of Title III did not result in a fundamentally unfair proceeding or a miscarriage of justice because the petitioner had received a full and fair hearing on his suppression claim and other trial evidence established the reliability of the evidence obtained through the wiretap).

---

[6] *But see Pobliner v. Fogg*, 438 F. Supp. 890, 892 (S.D.N.Y. 1977); *Zagarino v. West*, 422 F. Supp. 812, 819 (E.D.N.Y. 1976) (both finding that *Stone v. Powell* bars Title III claims to the same extent as Fourth Amendment claims).

9

Rivera asserts that the wiretap application failed to comply with Title III in two ways: first, because the detective who submitted an affidavit in support of the application "admitted that . . . [prior] investigative methods had proved to be fruitful at the time of such [wiretap] application," and second, because the affidavits supporting the wiretap application failed to include "details of the offense that has been, is being, or is about to be committed." Objections at 4. Both arguments are unavailing. In denying Rivera's motion to suppress the wiretap evidence, the state trial court found that the supporting affidavit adequately explained that "conventional investigative methods, while productive, [had] yielded limited information and reasonably appeared to be unlikely to produce the evidence necessary to accomplish the goals of the investigation," such as capturing the contents of conversations between certain individuals, or were "too dangerous to employ." SR 78. That these prior investigations had produced "limited" evidence does not mean that those investigations were "fruitful" or had succeeded. Moreover, Title III does not require that "any particular investigative procedures must be exhausted before a wiretap may be authorized"; it requires only "disclosure as to the use, success, and potential success of other investigative techniques." *United States v. Miller*, 116 F.3d 641, 663 (2d Cir. 1997). *See also United States v. Tomero*, 462 F. Supp. 2d 565, 570 (S.D.N.Y. 2006) ("Section 2518(3)(c)'s exhaustion requirement is far from an insurmountable hurdle. The government must demonstrate only that normal investigative techniques would prove difficult."). The affidavit supports the state trial court's finding, as it explains in detail how a variety of traditional investigative techniques, such as confidential informants, physical surveillance, and phone billing records, had been used to some success but would be insufficient to achieve the ultimate objectives of the investigation, and how other techniques, such as a grand jury, DMV and criminal history checks, and search warrants, would similarly be unhelpful at the then-present stage of the investigation. *See* SR 139-50. Similar affidavits have been repeatedly approved as compliant with Title III. *See, e.g., United States v.*

*Villarman-Oviedo*, 325 F.3d 1, 10-11 (1st Cir. 2003); *Tomero*, 462 F. Supp. 2d at 570-71; *United States v. Burford*, 755 F. Supp. 607, 613 (S.D.N.Y. 1991). Rivera's second argument is meritless as the affidavit describes, in significant detail, the drug conspiracy that was "being . . . committed" and of which Rivera was ultimately convicted, including Rivera's involvement in that conspiracy. *See* SR 123-39.[7] Without any indication that a Title III violation occurred, Rivera's claims based on that statute cannot prevail. And even if Rivera had shown such a violation, the Court finds that any erroneous admission of evidence did not result in a complete miscarriage of justice or deprive Rivera of the rudimentary demands of fair procedure. *See Hill*, 368 U.S. at 428.

### *Severance Claim*

The Court next considers Rivera's objection to the Report's recommended dismissal of her claim that her right to a fair trial was violated when the state trial court declined to sever her trial from that of her co-defendant's. As an initial matter, it notes that Rivera raised multiple severance motions on multiple grounds, not all of which have been preserved. First, she filed a *pro se* motion before trial requesting severance to prevent her co-defendants from "incriminating [her] further." SR 282-83. Second, her defense counsel filed an omnibus motion before trial that included a motion to sever on the same ground—that Rivera's Confrontation Clause rights would be violated by the introduction of out-of-court statements of her co-defendant. *Id.* at 109-10. Third, and most relevant here, trial counsel made an oral motion to sever after the summation of Rivera's co-defendant, Benny Garay, arguing that the summation was prejudicial to Rivera because Garay's counsel had asserted that Rivera was the leader of the conspiracy. *See* Trial Tr. at 2255-57.[8] The

---

[7] Rivera objects to a second affidavit submitted by another detective in support of the wiretap application—which described several purported incidents showing Rivera's alleged propensity for violence in order to establish that other investigative procedures would be too dangerous—on the ground that the proceedings regarding those prior bad acts terminated in her favor. *See* SR 159-63. But Title III requires only that a wiretap application be supported by details "of the offense that has been, is being, or is about to be committed," which the primary affidavit amply supplied.
[8] Citations to "Trial Tr." refer to the state court trial transcript, which may be found at ECF 21.

11

state trial court never appeared to address Rivera's *pro se* motion, but it denied the omnibus motion before trial, finding that the statements the prosecution intended to introduce from co-defendants did not implicate Rivera. *See* SR 87. As to the post-summation severance motion, although the state trial court's initial response to counsel's application was merely that it was "way to[o] late now," Trial Tr. at 2255, the court then appeared to deny that motion on the merits, observing that "[co-]counsel's arguments were basically this is what the People are going to allege is proof against this person. Look how different it is on the proof they show on another [defendant]," *id.* at 2257. The trial court then denied counsel's subsequent motion for a mistrial on this ground. *Id.* at 2370-73. In denying a mistrial, the court again concluded that Garay's defense "wasn't an inconsistent defense with [that of] Ms. Rivera" and that Garay's summation had "just pointed out the evidence to the jury so they wouldn't confuse who the evidence pertained to, not that it was truthful evidence, [or that] it was accurate evidence." *Id.* at 2373.

On direct appeal, Rivera challenged only the denial of the post-summation severance motion and the denial of the corresponding motion for a mistrial. *See* SR 388-95. The Appellate Division affirmed on two grounds. First, although Rivera's counsel had, throughout trial, repeatedly attempted to reserve his right to make a severance motion if and when Garay's defense became so antagonistic with Rivera's that it prejudiced Rivera, *see* Trial Tr. at 131-32, 376, the court held that the "motion was untimely," and that good cause for the untimeliness had not been shown because Rivera's counsel had been "in a position to ascertain the codefendant's planned defense long before trial," SR at 608. Second, it held that Rivera had "failed to demonstrate that her defense and that of her codefendant had become so antagonistic as to require separate trials" and that the references to Rivera in Garay's summation "were not so prejudicial as to deny defendant a fair trial" such that "any error in denying the severance motion was harmless." *Id.* at 608-09. The § 440 court, in turn, concluded that the claim was procedurally barred because it had

12

been raised and decided on the merits on direct appeal. *Id.* at 813 (citing N.Y. C.P.L. § 440.10(2)(a)).

Without commenting on the Appellate Division's untimeliness finding the Court concludes that its dismissal of Rivera's severance claim on the merits was not an unreasonable application of federal law. A habeas petitioner challenging the denial of a severance motion must show, at minimum, prejudice sufficient to warrant relief under Federal Rule of Criminal Procedure 14 or its state counterpart. *See Grant v. Hoke*, 921 F.2d 28, 31 (2d Cir. 1990); Fed. R. Crim. P. 14(a) ("If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."). The Second Circuit has explained that even when there is "considerable antagonism" between defenses, habeas relief is not warranted unless a jury, "in order to believe the core testimony offered on behalf of [a co-defendant], must necessarily have disbelieved the defense offered on behalf of [the petitioner]" such that the resulting trial was "fundamentally unfair." *Grant*, 921 F.2d at 32. During Garay's summation, his counsel asserted—over Rivera's counsel's objection—that Rivera was "the boss" of the other members of the alleged conspiracy, and that all other individuals "answer[ed]" to her. Trial Tr. at 2223. Notwithstanding these isolated comments at summation, Court agrees with the Report that a jury could believe both Garay's defense and Rivera's defense—such as, for instance, by concluding that the Government had not proved the existence of a conspiracy at all. *See* Report at 28. Moreover, given the overwhelming evidence that was presented during trial establishing Rivera's leadership role in the conspiracy, the Court is inclined to conclude that counsel's statements at summation did not prejudice Rivera. Accordingly, the state court's decision that Rivera was not deprived of a fair trial was not an unreasonable application of federal law.

### *Brady* Claim

Next, Rivera objects to the Report's recommended dismissal of her *Brady* claim. Her objection, however, merely reiterates her earlier argument that she was prejudiced by the prosecution's withholding of the fact that her co-defendant had a proffer session because had she known this fact earlier, she would have timely raised and ultimately prevailed on a severance motion. *See* Objections at 7. She does not even purport to argue why the withheld information from the proffer agreement was favorable to her, as is required to state a *Brady* claim, *see Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Indeed, given the fact that Rivera's counsel posited that severance would be warranted if any part of the proffer were admitted into evidence, *see* Trial Tr. at 372-76, it seems more likely the case that the contents of the proffer were harmful to her defense. In any event, because Rivera's objection merely reiterates her Petition's initial arguments, the Court reviews the Report's ruling on her *Brady* claim for clear error and finds none.

### *Confrontation Clause Claim*

Turning to Rivera's objections to the Report's recommended dismissal of her Confrontation Clause claim, the Court agrees with the Report's finding that an adequate and independent state ground bars review of this claim. "New York law requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record." *Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003) (citing N.Y. C.P.L. § 440.10(2)(c)). A state court's invocation of § 440.10(2)(c) to deny a claim is recognized as an adequate and independent state law ground that bars habeas review of that claim. *See, e.g.*, *Clark v. Perez*, 510 F.3d 382, 390-91 (2d Cir. 2008); *Felder v. Goord*, 564 F. Supp. 2d 201, 215 (S.D.N.Y. 2008); *Brown v. McKinney*, 358 F. Supp. 2d 161, 170 (E.D.N.Y. 2005). Because Rivera did not raise a Confrontation Clause claim on her direct appeal, *see* SR 317-435, despite such a claim being available on the existing

record, the § 440 court properly determined that it was compelled to deny the claim when Rivera belatedly raised it, *see id.* at 639-50, 813; nor may this Court review it.

Rivera argues that this claim is not procedurally barred because "there is no longer an availability of state court corrective action." Objections at 7. But this language describes the standard for exhaustion, not procedural default. *See, e.g.*, *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) ("[I]f the petitioner no longer has remedies available in the state courts under 28 U.S.C. § 2254(b), we deem the claims exhausted."). Rivera also suggests that her trial counsel's ineffectiveness suffices as cause for this procedural default. Objections at 7. But she was represented by new counsel on her direct appeal, and does not argue that her direct appeal counsel was ineffective, *cf. Moseley v. Scully*, 908 F. Supp. 1120, 1128 (E.D.N.Y. 1995), *aff'd*, 104 F.3d 356 (2d Cir. 1996) (finding that § 440.10(2)(c) did not bar habeas review when a petitioner was represented by the same allegedly ineffective counsel at trial and on direct appeal); this warrants dismissal of her claim.

### *Juror-Replacement Claim*

Rivera next objects to the Report's recommendation to dismiss her claim challenging the use of an alternate juror at trial after an original juror called in sick. The Report is correct, however, that this claim is procedurally barred under § 440.10(2)(c) because, as the § 440 court concluded, it was record-based and could have been, but was not, raised on Rivera's direct appeal. *See* SR 814-15. Moreover, the Report properly concluded that this claim raises only a state law issue, not a violation of federal law that is cognizable on habeas review. *See Hughes v. Phillips*, 457 F. Supp. 2d 343, 368 (S.D.N.Y. 2006). In disputing this determination, Rivera cites the Fifth Amendment's Double Jeopardy Clause, as well as *Illinois v. Somerville*, 410 U.S. 458 (1973), and *United States v. Jorn*, 400 U.S. 470 (1971), both of which concern the application of double jeopardy to a

15

mistrial—but she does not explain how the replacement of a juror during trial, without more, implicates that doctrine here. The Court therefore agrees that this claim is without merit.

### *Unsworn-Witness Claim*

Rivera also objects to the Report's recommended dismissal of her claim that the trial judge and prosecutor improperly acted as "unsworn witnesses" against her. In doing so, however, she admits that her objections mirror in her initial Petition. *See* Objections at 9 ("With respect to the merits of Petitioner's claim, Petitioner objects on the ground that the admission of this evidence is a violation of clearly established Federal law, as indicated in Petitioner's initial petition."). The Court finds that this objection is conclusory as it merely repeats the arguments already made to Judge Netburn, and thus warrants only clear error review. Conducting such review, there is no clear error in the Report's findings that the claim both is procedurally barred under § 440.10(2)(c) and fails on the merits.

### *Ineffective Assistance of Counsel Claim*

The Court next turns to Rivera's ineffective assistance of counsel claim. To prevail on such a claim, a petitioner must show both that counsel's performance "fell below an objective standard of reasonableness" and that the petitioner was prejudiced by that unreasonable performance. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). To show prejudice, a petitioner must demonstrate a "substantial" likelihood that, but for counsel's errors, the result of the trial would have been different. *Harrington*, 562 U.S. at 111-12; *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005). The Report recommended denying this claim both on procedural grounds and on the merits. In objecting to the Report's merits analysis, Rivera merely repeats her petition's initial argument in conclusory terms, without objecting to any specific finding of the Report. *See* Objections at 9 ("Petitioner avers that she has, in fact, met both prongs of the *Strickland* standard."). This is a generalized objection that repeats the arguments initially made to Judge Netburn, and

16

therefore does not warrant *de novo* review.  Nor, on conducting clear error review, does the Court find any clear error in Judge Netburn's recommendation that Rivera's ineffective assistance claim be dismissed on the merits.

Rivera also objects to the Report's findings regarding her "substitution-of-counsel" claim, which stands on slightly different footing than her traditional ineffective assistance of counsel claim.  This allegation stems from Rivera's repeated complaints, at trial, that her lawyer was "refusing to help" her; "not listening" to her; not filing motions at her direction; and "not telling [her] story."  Trial Tr. at 1813-17, 1886.  She asserts that the trial court improperly failed to acknowledge these complaints, thus depriving her of her Sixth Amendment rights.  The Report recommended denying this claim as procedurally barred pursuant to § 440.10(2)(c) and on the merits.  As an initial matter, the Court agrees that this claim is procedurally barred, as the § 440 court explicitly concluded that the basis for this argument was available on the record but not raised on Rivera's direct appeal.  *See* § 440.10(2)(c); SR 815; Report at 47.

This claim also fails on the merits.  Where, as here, "a defendant articulates the reasons for [her] request for new counsel [at trial], the failure of a trial judge to inquire into that request is a procedural irregularity, which may not itself be a basis for granting habeas relief." *Norde v. Keane*, 294 F.3d 401, 412 (2d Cir. 2002).  "Instead, in order to succeed on this Sixth Amendment claim, the petitioner must demonstrate that [s]he was harmed by the trial judge's failure to inquire." *Id.* Here, the record shows that the state trial court appropriately inquired into Rivera's request to substitute counsel (to the extent her statements at trial can be generously construed as such a request).  After Rivera voiced her complaints, the court gave her an opportunity to be heard outside the jury's presence; she elaborated that her lawyer was "refusing to help" her and that the case against her was nothing more than an effort by the prosecutor to "retaliate" against her.  Trial Tr. at 1882-83.  She also requested the court appoint an "independent federal prosecutor" and allow

her to call additional witnesses. *Id.* The court advised Rivera that she had the right to testify in order to "tell her story," but that her attorney could not testify on her behalf for that purpose. *Id.* at 1883-84. The court also told Rivera that her counsel was in the best position to determine whether to call witnesses. *Id.* at 1883. He then appeared to deny her motion by stating, "We are doing the trial." *Id.* at 1885. The § 440 court rejected Rivera's resulting claim on the merits, determining that the state trial court's responses were "proper" and that Rivera received "ample opportunity" to be heard on her complaints. SR 815. The Court agrees with Judge Netburn that this conclusion did not constitute an unreasonable application of clearly established federal law. *See* Report at 49.

### *Eighth Amendment Claim*

Finally, Rivera objects to the Report's recommendation that her Eighth Amendment claim, which challenges her sentence as excessive, be dismissed. Her argument, however, cites either inapplicable caselaw on vindictive prosecution, *see* Objections at 11 (citing *United States v. Goodwin*, 457 U.S. 368 (1982)),[9] or New York state cases that cannot be the source of controlling federal law that would warrant habeas relief, *see id.* (citing *People v. Broadie*, 332 N.E.2d 338 (N.Y. 1975)). Nor does she otherwise establish how her 25-year sentence is grossly disproportionate to her offense of conviction such that an Eighth Amendment challenge might be successful, *see Harmelin v. Michigan*, 501 U.S. 957, 963 (1991). Accordingly, her Eighth Amendment claim cannot prevail.

***

The Court has reviewed all the remaining portions of the thorough and well-reasoned Report for clear error and finds none.

---

[9] Rivera does not purport to raise a claim of vindictive prosecution in violation of her due process rights, nor does the Court discern any such claim in her Petition.

## CONCLUSION

For the foregoing reasons, the Court adopts the Report in its entirety and dismisses Rivera's Petition. Because Rivera has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not be issued, in accordance with Judge Netburn's recommendation. *See* 28 U.S.C. § 2253(c)(2). The Clerk of Court is respectfully directed to terminate the motion at docket number 47 and to close this case.

SO ORDERED.

Dated: August 19, 2022
New York, New York

_____
Hon. Ronnie Abrams
United States District Judge